**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.**

**UNITED STATES OF AMERICA,**

   **Plaintiff,**

**v.**

**UP TO AND INCLUDING $4,500,000.00 ON DEPOSIT IN ACCOUNT NUMBER 37050168860100001945 AT CHINA CONSTRUCTION BANK CORPORATION HELD IN THE NAME OF JINING NACHEN TRADING CO LTD; and**

**UP TO AND INCLUDING $154,400.50 ON DEPOSIT IN ACCOUNT NUMBER 388006925872 AT BANK OF AMERICA,**

   **Defendants *In Rem*.**

---

<u>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***</u>

Plaintiff, the United States, by and through its undersigned counsel, alleges as follows:

**I. NATURE OF THE ACTION**

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C) and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit seized funds, more fully described as (collectively, "Defendant Assets"):

  a. Up to and including $4,500,000.00 on deposit in account number 37050168860100001945 at China Construction Bank Corporation held in the name of Jining Nachen Trading Co LTD; and

  b. Up to and including $154,400.50 on deposit in account number 388006925872 at Bank of America.

## II.   JURISDICTION AND VENUE

2.   This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3.   This Court has *in rem* jurisdiction over the Defendant Assets. *See* 28 U.S.C. §§ 1345, 1355(b).

4.   Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida. *See* 28 U.S.C. § 1355(b)(1).

## III.   FACTUAL ALLEGATIONS

At all times material to this Action:[1]

### A.   Background

5.   An Account Takeover ("ATO") was a scheme in which the perpetrator of the ATO gained unauthorized access to a victim's existing online account using stolen credentials. Once access was gained, the wrongdoer could impersonate the legitimate user through the stolen credentials to obtain personal identify information ("PII"), steal funds belonging to the victims, or commit other unlawful acts.

6.   A phishing scheme was a scam in which the perpetrator used fraudulent emails, texts, or other modes of electronic communication to obtain access to PII, bank account information, or commit other unlawful acts.

### B.   Relevant Individuals and Entities

7.   Victim Law Firm 1 was a law firm based out of West Palm Beach, Florida.

8.   Victim Law Firm 2 was also a law firm based out of West Palm Beach, Florida.

9.   Bank 1 is based in Memphis, Tennessee, and it has branches throughout the United

---

[1] All dates, times, and amounts in this Complaint are approximate.

States, including in the Southern District of Florida. Bank 1 was a "financial institution" as defined by 18 U.S.C. § 1030(e)(4).

10. Money Mule 1 was an individual that resided in Concord, New Hampshire.

**C.** **Overview of the Scheme**

11. As discussed in detail below, Law Firm 2 was the victim of a $17,556,700.00 ATO. The attacker used a phishing email to compromise internal mail servers. This allowed the attacker to use password recovery services through Bank 1 in Fort Lauderdale, Florida to gain financial account access. Following the ATO, funds were dispersed through 14 outgoing wires. Law enforcement has been able to trace funds from this ATO to the following accounts, among others:

    a. Account number 37050168860100001945 at China Construction Bank Corporation held in the name of Jining Nachen Trading Co LTD ("Defendant Account 1"); and

    b. Account number 388006925872 at Bank of America ("Defendant Account 2").

12. At an unknown date, Victim Law Firm 1 was Phished, and an unauthorized user gained access to an employee of Victim Law Firm 1's email account.

13. On January 27, 2026, an email purporting to be from an employee of Victim Law Firm 1, but was in fact a malicious email, was sent to Victim Law Firm 2, which compromised Victim Law Firm 2's network.

14. Once the attacker gained access to Victim Law Firm 2's network, on January 28, 2026, the attacker used two email addresses associated with Victim Law Firm 2 to initiate a password reset for Victim Law Firm 2's online account with Bank 1.

15. The password reset, among other things, allowed unauthorized access to Victim Law Firm 2's bank account held at Bank 1 ("Victim Account").

16. Bank records show that beginning on January 28, 2026, the attacker initiated 14

outgoing wire transfers from the Victim Account. In total, $17,576,700.00 was remitted from the Victim Account to 14 different bank accounts, both domestic and international, between 5:00pm on January 28, 2026, until 8:00am on January 29, 2026. Victim Law Firm 2 did not consent to those transfers.

### D.    Defendant Assets

17.    As discussed above, in total, $17,576,700.00 was remitted from the Victim Account to 14 different bank accounts, including, but not limited to, the accounts described below.

18.    On January 29, 2026, a $4,500,000.00 wire transfer was initiated from the Victim Account and remitted to Defendant Account 1. The memo line included with the wire transfer stated that the purpose of the wire transfer was "sales proceeds settlement settlement [sic]."

19.    Bank 1 requested that the wire transfer be reversed and the funds remitted back to Victim Law Firm 2. According to records from Bank 1, however, China Construction Bank Corporation ("China Construction") replied to Bank 1 and said that they had done an investigation and did not believe the wire transfer was fraudulent. As a result, China Construction did not comply with Bank 1's request to return the funds.

20.    On January 29, 2026, $600,000.00 was disbursed from the Victim Account to Money Mule 1's business bank account ending in 5807 held at Bank of America ("Money Mule Business Account"), which had a prior balance of $100.00. Immediately following receipt of the $600,000.00, $304,000.00 was wired on January 29, 2026, from the Money Mule Business Account to Defendant Account 2,[2] which had a prior balance of $1,837.75. There were no other transactions in or out of the Money Mule Business Account between its receipt of funds from the

---

[2] Victim Law Firm 2 was able to recover $296,070.00 from the Money Mule Business Account directly from Bank of America.

Victim Account until the $304,000.00 was transferred to Defendant Account 2.

21.	The rapid transfer of unusually large sums of money that far exceeds the account's historical activity is indicative of money mule activity.

22.	The Money Mule Business Account was initially opened with only a minimal deposit, then quickly received fraudulent funds from the Victim Account and, within the same day, dispersed those funds to cryptocurrency exchange services and personal accounts.

23.	After the $304,000.00 was transferred from the Money Mule Business Account to Defendant Account 2, there were only three deposits totaling $607.75 between January 29, 2026, and February 19, 2026. However, there were $252,045.00 in withdrawals during this same time. On February 19, 2026, Bank of America froze the remaining balance of $154,400.50 on deposit in Defendant Account 2.

## IV.	BASIS FOR FORFEITURE

24.	Pursuant to 18 U.S.C. § 1030(a)(2), it is unlawful to intentionally access a computer without authorization or exceeding authorization, and thereby obtain information contained in a financial record of a financial institution.

25.	18 U.S.C. § 1343 makes it unlawful to:

devise[] or intend[] to devise any scheme or artifice to defraud, or [] obtain[] money or property by means of false or fraudulent pretenses, representations, or promises, transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

26.	18 U.S.C. § 981(a)(1)(C) provides for the civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" 18 U.S.C. § 1030 or any property constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses.

27.     Pursuant to 18 U.S.C. § 1956(c)(7)(A), the term "specified unlawful activity" includes any act or activity constituting an offense enumerated in 18 U.S.C. § 1961(1). Violations of 18 U.S.C. § 1343 are one of the enumerated offenses listed in 18 U.S.C. § 1961(1).

28.     Under 18 U.S.C. § 984, in any forfeiture action in rem in which the subject property funds deposited in an account in a financial institution: it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property. Any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture.

## FIRST CLAIM
### Proceeds of Computer Fraud
### (18 U.S.C. § 981(a)(1)(C)

29.     The factual allegations in paragraphs 1 through 28 are re-alleged and incorporated by reference as if fully set forth herein.

30.     As set forth above, the Defendant Assets are property that constitutes or is derived from proceeds traceable to a computer fraud in violation of 18 U.S.C. § 1030(a)(2).

31.     Accordingly, the Defendant Assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## SECOND CLAIM
### Proceeds of Wire Fraud
### (18 U.S.C. § 981(a)(1)(C)

32.     The factual allegations in paragraphs 1 through 28 are re-alleged and incorporated by reference as if fully set forth herein.

33.     As set forth above, the Defendant Assets are property that constitutes or is derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343, which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(F).

34.     Accordingly, the Defendant Assets are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Court issue a warrant for the arrest *in rem* of the Defendant Assets; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Assets; that the Defendant Assets be forfeited and condemned to the United States of America; and for such other and further relief as may be deemed just, necessary and proper.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:     */s/ Nicole Grosnoff*
        Nicole Grosnoff
        Assistant United States Attorney
        Court ID No. A5502029
        nicole.s.grosnoff@usdoj.gov
        U.S. Attorney's Office
        99 Northeast Fourth Street, 7th Floor
        Miami, Florida 33132-2111
        Telephone: (305) 961-9294
        Facsimile: (305) 536-4089

## **VERIFICATION**

I, Anthony Caraballo, hereby verify and declare, under penalty of perjury, that I am a Special Agent with the United States Secret Service and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement agents, as well as my investigation of this case, together with others, as a Special Agent of the United States Secret Service.

Executed on this \_\_\_\_\_ day of _____2026

_____
ANTHONY CARABALLO
Special Agent, United States Secret Service

8